COURT OF APPEALS
DECISION
DATED AND FILED

July 22, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP2017-CR**

Cir. Ct. No. **2019CT731**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

KEITH J. DRESSER,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Dane County: JOHN D. HYLAND, Judge. *Affirmed.*

¶1 GRAHAM, J.[1] Keith J. Dresser appeals a judgment of conviction for operating a motor vehicle while intoxicated and with a prohibited alcohol

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

concentration. Dresser argues that he was seized by a sheriff's deputy while he sat apparently unconscious in his vehicle, and further, that the warrantless seizure was not justified under the community caretaker doctrine. I conclude that the circuit court properly denied Dresser's motion to suppress evidence gathered during the seizure. Accordingly, I affirm.

## BACKGROUND

¶2 The following facts are undisputed. Deputy Trent Schafer was on patrol during the early morning hours of October 5, 2019. At approximately 5:00 a.m., he saw a single vehicle in the parking lot of a closed fast food restaurant. Schafer drove past the vehicle to get a closer look and saw a person, later identified as Dresser, who appeared to be either sleeping or passed out. Schafer then pulled into the parking lot, parked behind the vehicle, and activated his red and blue emergency lights.

¶3 According to Schafer's subsequent testimony, he activated his lights "[b]ased on the procedures we use whenever we're making contact with somebody in a safe manner." On appeal, the State does not contend that Schafer had reasonable suspicion or probable cause to temporarily seize Dresser at that time.

¶4 When Schafer approached the vehicle, he observed Dresser in the driver's seat with his head straight down and something in his hand that appeared to be vomit or snot. Schafer then knocked on the passenger side window, waking Dresser, and either Schafer or Dresser, or both of them, opened the passenger side door. The parties do not dispute that, based on Schafer's subsequent observations, he had probable cause to arrest Dresser for OWI-related offenses.

¶5     Dresser was charged with operating a motor vehicle while under the influence of an intoxicant and with a prohibited alcohol concentration, both as third offenses.  He subsequently filed a motion to suppress all evidence obtained in the seizure and subsequent arrest.  After a hearing, the circuit court denied the motion.  The court concluded that Dresser was seized at the time Schafer pulled behind his vehicle and activated the squad car's emergency lights, but that the warrantless seizure was justified based on the community caretaker doctrine.  Dresser appeals.

## DISCUSSION

¶6     A motion to suppress evidence presents a question of constitutional fact.  I uphold the circuit court's findings of fact unless they are clearly erroneous, and I review de novo the application of constitutional principles to those facts.  *State v. Kramer*, 2009 WI 14, ¶16, 315 Wis. 2d 414, 759 N.W.2d 598.  Dresser does not challenge any fact found by the circuit court.  The dispositive issue is the application of the community caretaker doctrine, which presents an issue of law subject to de novo review.  *Id.*

¶7     The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution both guarantee that the "right of the people to be secure in their persons ... against unreasonable searches and seizures" "shall not be violated."  A warrantless seizure is unreasonable, and therefore unconstitutional, unless it falls within one of the "'specifically established and well-delineated'" exceptions to the warrant requirement.  *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

¶8    One such exception is the community caretaker function. ***Kramer***, 315 Wis. 2d 414, ¶20. An officer's community caretaker function is distinct from the officer's law enforcement function, which involves the "'detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'" ***Id.***, ¶23 (citation omitted). An officer may seize a person without a warrant when the officer is exercising their community caretaker function. ***State v. Kelsey C.R.***, 2001 WI 54, ¶34, 243 Wis. 2d 422, 626 N.W.2d 777.

¶9    The community caretaker exception applies when the following requirements are satisfied:   (1) a seizure within the meaning of the Fourth Amendment occurred; (2) the officer was engaged in a bona fide community caretaking activity; and (3) the public need and interest outweighs the intrusion upon the privacy of the individual. ***Kramer***, 315 Wis. 2d 414, ¶21. The State bears the burden of "proving that the officer's conduct fell within the scope of a reasonable community caretaker function." ***Id.***, ¶17.

¶10    With respect to the first requirement, the circuit court determined that Dresser was seized within the meaning of the Fourth Amendment at the time that Schafer parked behind him and activated his emergency lights. The State challenges this determination, but I assume without deciding that the court's determination that Dresser was seized is correct.

¶11    As for the second requirement, Wisconsin courts "carefully examine[] the expressed concern for which the community caretaker function was undertaken to determine if it was bona fide." ***State v. Pinkard***, 2010 WI 81, ¶26,

4

327 Wis. 2d 346, 785 N.W.2d 592.[2]  The question is whether, under the totality of circumstances, the officer had an "objectively reasonable basis" to believe that "a member of the public" was "in need of assistance."  *Kramer*, 315 Wis. 2d 414, ¶¶30, 32.  I conclude that the facts as found by the circuit court meet this objective standard.

¶12    Here, the circuit court determined that, under the circumstances, the only conclusion that could be drawn is that Schafer was engaged in a bona fide community caretaking activity.  As the court explained:

> The video and the testimony demonstrate that the vehicle was sitting in a parked stall outside of a closed business at 5:00 in the morning.  Driving up to look more closely at the vehicle was an appropriate police step to take in order to protect persons and property.  Upon observing that a person seated in the driver's seat appeared to be passed out or asleep, the deputy had a duty to ensure that the person was safe; that they were not in medical distress or in need of assistance.  This is especially true when overdose deaths are prevalent in this community.

¶13    On appeal, Dresser contends that "there was no reason to believe that anything more distressing was occurring than an individual sleeping in his car—hardly a remarkable occurrence, especially given the time of day."  I disagree.  Dresser's posture, the time of day, and the prevalence of overdoses in the community all contribute to an objectively reasonable basis for Schafer to

---

[2] The State cites *State v. Pinkard*, 2010 WI 81, 327 Wis. 2d 346, 785 N.W.2d 592, in its appellate brief.  To the extent that *Pinkard* held that a warrantless search of a house was constitutional based on the community caretaker doctrine, that holding has been recently overruled by the United States Supreme Court.  *See Caniglia v. Strom*, __ U.S. __, 141 S. Ct. 1596 (2021) (holding that police officers' community caretaking duties do not justify warrantless searches and seizure in the home).  *Caniglia* was decided after the briefing in this case was completed.  I cite *Pinkard* here to support a principle that has not been overruled.

conclude that Dresser may have been in need of medical assistance. Schafer was not required to rule out the possibility that the driver was not in need of assistance before exercising his bona fide community caretaker function.[3]

¶14 I now turn to the third requirement and consider whether the public need and interest outweigh the intrusion upon Dresser's liberty interests. *Kramer*, 315 Wis. 2d 414, ¶40. In weighing these interests, courts have considered "'the degree of public interest and exigency of the situation'"; "'the attendant circumstances surrounding the seizure, including time, location and degree of overt authority and force displayed'"; "'whether an automobile is involved'"; and "'the availability, feasibility and effectiveness of alternatives to the type of intrusion actually accomplished.'" *Id.*, ¶41 (citation omitted). The ultimate touchstone for this analysis is reasonableness. *Kelsey C.R.*, 243 Wis. 2d 422, ¶34. "The stronger the public need and more minimal the intrusion upon an individual's liberty, the more likely the police conduct will be held to be reasonable." *Kramer*, 315 Wis. 2d 414, ¶41.

¶15 Dresser argues that "[t]here was virtually no public interest or exigency demanding action in this case," but I disagree for the reasons discussed above.

¶16 Dresser's remaining argument is almost exclusively focused on the fact that Schafer activated his squad car's emergency lights. Dresser appears to

---

[3] *See State v. Kramer*, 2009 WI 14, ¶30, 315 Wis. 2d 414, 759 N.W.2d 598 (holding that an officer who stopped to check on a vehicle legally parked, with hazard lights activated, on the side of a highway at 8:45 p.m. "had an objectively reasonable basis for deciding that a motorist may have been in need of assistance").

acknowledge that, under the circumstances, it would have been reasonable for Schafer to park his squad car and approach Dresser's vehicle on foot to check on his medical condition. However, according to Dresser, Schafer did not need to activate his emergency lights as a safety precaution in the parking lot. Dresser argues that Schafer's decision to do so was "gratuitous," and there existed "clearly less intrusive means, both available and feasible," for checking on whether Dresser needed medical attention. As I understand it, Dresser is arguing that everything Schafer did was appropriate *except* for the activation of his emergency lights, which was an overt display of authority and was unnecessary under the circumstances.

¶17 Here, the intrusion upon Dresser's liberty interests was minimal. Dresser's vehicle was already parked. By activating his emergency lights, Schafer temporarily prevented Dresser from leaving while Schafer checked on Dresser's condition. Although the record does not demonstrate a strong need for Schafer to activate his lights, this point alone does not outweigh the undeniable public interest in law enforcement responding to individuals who may be suffering from the effects of substance abuse or other medical emergencies. Therefore, I conclude that the public need and interest outweigh the minimal intrusion upon Dresser's liberty interests.

¶18 In sum, I assume that Schafer seized Dresser when he activated his emergency lights and conclude that, based on the totality of the circumstances, Schafer's conduct fell within the scope of the exception for a bona fide community caretaker function. Accordingly, I conclude that the circuit court properly denied Dresser's motion to suppress, and I affirm the judgment of conviction.

7

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.